ANDREW J. JENNINGS, administrator, *vs.* METROPOLITAN LIFE INSURANCE COMPANY.

Bristol.    October 24, 1888. — November 28, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Life Insurance — Proofs of Death — Limitation of Action — Waiver by Agent — Evidence.*

At the trial of an action on a life policy issued by a foreign insurance company, brought by the administrator of the insured more than six months after his death, which policy provided that no action should be commenced thereon after that length of time, and that agents were not authorized to make, alter, or discharge contracts or waive forfeitures, it appeared that informal proofs of death, reciting that the check in payment was to be sent to the company's agent, were handed by the beneficiary to the agent, who put his certificate upon them ; that the proofs were then forwarded to the company, and answer was made to the beneficiary through the agent as from the company, that, as "something was wrong," he must wait a little, and that "the case was all right" and payment would shortly be made; that the policy and a receipt-book of premiums paid was sent by the beneficiary to the company through the agent, to whom also a written demand on the company for their return was delivered by the beneficiary's counsel; that they were afterwards returned by the agent to the counsel; and that the agent solicited insurance, forwarded applications and proofs of death to the company, and, though he could neither make nor waive contracts, felt authorized to state that, if the contract was all right, it would be paid, and he had authority to pay every time the claim was just.   The beneficiary's counsel, who also acted for the administrator, was permitted to testify that the agent told him that the company was investigating the loss, and if there was no fraud the money would be paid, and that, relying on this assurance, he failed to bring an action within the limit.   *Held,* that a finding was warranted that the company had waived directly or through its agent any informality or insufficiency in the proofs of death, as well as the six months' limit for bringing an action, which waiver enured to the plaintiff's benefit.   *Held, also,* that the counsel's testimony was competent to show that the plaintiff acted on representations which may have estopped the company.

CONTRACT upon a policy of insurance, issued by the defendant, a New York corporation, upon the life of Slater Dewhurst,

the plaintiff's intestate. Writ dated August 2, 1887. Trial in the Superior Court, before *Staples*, J., who allowed a bill of exceptions, which, so far as material, was as follows.

The policy, which was not under seal, contained the following provisions: " Sixth. Agents are not authorized to make, alter, or discharge contracts, or waive forfeitures, or receive premiums on policies in arrears after the time allowed by the regulations of the company. . . . Eighth. . . . No suit shall be brought, nor action commenced, against said company, under this policy, until ten days shall have expired after the filing of proofs in its chief office, nor after six months from the date of death of the insured, it being understood and agreed that, if any such suit or action be commenced after said six months, the lapse of time shall be taken to be conclusive evidence against any claim, the provisions of any and all statutes of limitation to the contrary being hereby expressly waived. Proofs of death must be furnished upon the forms prescribed by the company at the time of the maturity of this policy."

The following facts were proved or admitted. The intestate died in Fall River, on January 4, 1887, and the plaintiff, a public administrator, was appointed administrator of his estate on July 1, 1887. George Baldwin, an uncle of the intestate and the beneficiary under the policy, paid the premiums thereon, and, after the intestate's death, took certain proofs of death, which did not conform to the requirements of the policy, to Thomas Bailey, superintendent of the defendant company in Fall River. These proofs of death directed the " check in settlement of this claim to be sent to Thomas Bailey, superintendent at Fall River, Mass."; and, upon a certificate from Bailey that he had investigated the claim being affixed thereto, were then forwarded to the defendant company. The policy, and a receipt-book containing a list of the premiums paid on the policy, were also sent by Baldwin to the defendant company through Bailey. Subsequently, a demand in writing for the policy and the receipt-book was made upon the defendant company by Samuel W. Ashton, Baldwin's counsel, and given by him to Bailey, who forwarded it to the defendant, and the defendant returned them to Mr. Ashton through Bailey.

Baldwin testified that, after forwarding the proofs of death,

he received an answer from the defendant through Bailey as from the company; that Bailey's reply was, "Somebody wrote to the company that there was something wrong some way, and I must wait a little longer"; and, on cross-examination, in reply to the question, "Did Bailey tell you the proofs were all right?" replied, "No, sir; he told me that the case was all right, and that if I would wait a little while he would pay me the money. I waited over three months." Mr. Ashton, who acted as counsel for Baldwin, and for the plaintiff after he became administrator, testified, against the defendant's objection, that, after receiving a letter from the defendant, dated April 29, 1887, to the effect that the company did not feel called upon to pay the policy, he had a conversation with Bailey on May 2, 1887, in which Bailey said that "the company were investigating, and as soon as they had investigated, if there was no fraud, they would pay the money"; and that this assurance of Bailey kept him from bringing an action on the policy, as he hoped the loss would finally be settled. This testimony was admitted solely on the question of the waiver of the six months' limitation in the policy.

Bailey testified, that he was the defendant's superintendent in Fall River, and that he had always told Mr. Ashton that the claim would be paid if it was just. In answer to the question, "What were your duties for the company?" he replied, "My duties are these: I can neither make nor waive contracts; that the company has alone; the president and the secretary are the only two that can make or waive contracts; that is the condition of the policy." And in answer to the question, "You looked after getting insurance here, and forwarded the application to the company and proofs of death?" said, "Yes, sir, those things; I have no authority whatever to make contracts." On cross-examination he testified, that his only authority was to solicit insurance, and that he had no power to make contracts; that the company would pay every claim to which no fraud was attached; that he felt authorized to say that, if a contract was all right, it would be paid; that he had authority to pay claims every time that the claim was just; that he did have the conversation with Mr. Ashton, and gave him to understand that, if the claim was all right, it would be paid; that the defendant company was too honorable to take advantage of any six months'

delay about it; and that, since the bringing of the action, he had frequently told Mr. Ashton that the claim, if it was a just one, would be adjusted.

. The judge refused to rule, as requested by the defendant, that the action could not be maintained, and submitted to the jury, with instructions, not otherwise excepted to, the question as to whether Bailey had authority from the defendant company to waive the formal proofs of death and the six months' limitation as to the bringing of actions, as well as the following questions: "1. Did the defendant company waive the formal proof of loss required by the policy? 2. Did the defendant company waive the stipulation in the policy as to the limitation of the right of action to six months after the decease of the insured?" The jury answered these questions in the affirmative, and returned a verdict for the plaintiff; the defendant alleged exceptions.

*H. K. Braley,* for the defendant.

*J. M. Wood,* (*S. W. Ashton* with him,) for the plaintiff.

W. ALLEN, J.   Baldwin testified, that, after sending the proof of death to the defendant, he received the answer through Bailey as from the company, that " somebody wrote to the company that something was wrong some way, and I must wait a little longer," and that " the case was all right, and if I would wait a little while he would pay me the money." Bailey was the defendant's superintendent at Fall River, his certificate accompanied the proof of death, and the check in settlement of the claim was to be sent to him. Bailey was a witness for the defendant, and did not contradict this testimony of Baldwin, nor deny that the defendant sent the answer to the proof of death to Baldwin through him. From this evidence, without other proof of Bailey's agency, the jury would have been justified in finding that the company itself, by the answer which it sent to Baldwin to the claim and proof made by him, waived any informality or insufficiency in the proof. *Clark* v. *New England Ins. Co.* 6 Cush. 342.   *Underhill* v. *Agawam Ins. Co.* 6 Cush. 440.   *Little* v. *Phœnix Ins. Co.* 123 Mass. 380.

Samuel W. Ashton was counsel for Baldwin, and after the appointment of the plaintiff as administrator was counsel for both him and Baldwin. His conversations with Bailey, as testified to by him and by Bailey, are sufficient to justify the jury

in finding that the provision of the policy, that no action should be commenced after six months from the date of the death, as well as that relating to proof of death, were waived by the defendant, if Bailey had authority to waive the provision or to make the statements which it is testified that he made. If the delay to bring suit was caused by assurances, for which the company was responsible, that it would pay if the demand was just, it is estopped to set up as the defence to a just claim that the action was not sooner brought. The testimony of Mr. Ashton, that he was kept from bringing the action by the declarations of Bailey, was competent only to show that the plaintiff acted upon such representations, so that the defendant might be estopped if it made or was responsible for the representations.

It will be observed, that the authority called for is not to make a contract, or to waive a forfeiture. It does not relate to the substance of the contract, or the remedy, or extend to creating or reviving a liability. It is authority to do that which may estop the company from insisting on the condition that the action shall be commenced within a particular time. The policy provides that agents are not authorized to make, alter, or discharge contracts, or waive forfeitures. There is nothing in this provision to prohibit a superintendent from making such representations and giving such assurance as, if acted on, may estop the company from taking advantage of the six months' limitation. There was no direct evidence as to the authority and duty of the superintendent. Bailey was the only witness in regard to this, and, when asked by the defendant what his duties as superintendent were, his answer was negative, — that he could neither make nor waive contracts, — and referred to the condition in the policy in regard to agents. He said, in answer to a particular question, that he looked after getting insurance, and forwarded applications and proofs of death to the company; but he did not say that there was any limitation on his authority to act for the company, except what might be found in the provision in the policy, before referred to, in regard to the authority of agents. He said, on cross-examination, that he solicited insurance, but did not make the contracts; that he felt authorized in saying that, if the contract was all right, it would be paid; and that he had authority to pay every time the claim

was just. He was the superintendent in Fall River of an insurance company of another State, which does not appear to have had any other general agent in this State. In this particular case he received the proof of death, and put his certificate upon it, if he did not forward it to the company, and the check in settlement was to be sent to him. The answer of the company to Baldwin's claim and proof of death was made through him. The policy and receipt-book containing entries of premiums paid were sent to the company through him by Baldwin, and the written demand on the company for their return was delivered to him by Mr. Ashton, and they were returned to Mr. Ashton by him. Upon the whole evidence, we think it was a question for the jury, not only whether Bailey was not authorized under his general authority to waive the provision of the policy in question, but whether he was not specially authorized to represent that the company would make no question except upon the justice of the claim, and would not take advantage of delay in bringing an action. Baldwin is the beneficiary and the party in interest in this suit; whether he could or could not have maintained an action in his own name, any waiver to him or his counsel of the conditions of the policy will enure to the benefit of the plaintiff in this suit.

In the opinion of a majority of the court, the entry must be,

*Exceptions overruled.*